vs. Museum of Fine Arts, Mr. Richmond. May it please the Court, my name is Bill Richmond and I represent the appellants, the Emden brothers. They are the heirs as referenced in our pleadings and in the underlying trial court pleadings as well. This court should reverse the trial court's grant of a motion to dismiss filed by the Museum of Fine Arts Houston, the appellee, on 12B6 grounds for three reasons, all related to the act of state doctrine and its misapplication by the trial court. First, there was no official act that occurred regarding the painting at issue, the Emden 1025 Perna. Second, even if an official act occurred, no invalidation is required, which is a hallmark requirement for applying the act of state defense. Finally, the Fifth Circuit's articulated basis for applying the act of state doctrine, frustration of international relations, is not implicated in this case, given that both U.S. and Dutch government policy is fully supportive of restitution efforts in the available circumstances and systems, here, the U.S. federal trial court system. Throughout this case, I will refer to two important terms, the Emden 1025 Perna, noted because of a small code that was painted by a holder of the original artwork, and the After Bellotto. The After Bellotto is the subsequent painting, perhaps by a student, but nonetheless not the original and not by Bellotto, but merely in the style. The distinction between these two pieces of art is critical to many of the applications of the act of state, and the short opinion of the trial court in dismissing fails to note that distinction and the applicability to the act of state doctrine. Here the standard for 12b-6 is often lost. Looking at the record on appeal, one can see how the arguments back and forth devolve into an issue of what's on the merits related to the act of state doctrine. But all the cases related to this, and most particularly the von Sayer opinion out of the Ninth Circuit, which is one of the few circuit court of appeal opinions to actually get into this issue related to restituted war art, all look to the issue of discovery related to the act of state doctrine, and how there may be plausible inferences drawn from pleadings. But when there are two or more plausible inferences to be drawn from the pleadings, the tie goes to the runner. And here that means the pleading party, the appellant, the plaintiff in this case. The actual standard here, of course, is critical that even if actual proof is improbable or recovery is remote and unlikely, the standard is still met if the pleadings suffice. Finally, there is no comparison to other competing inferences, as this court held in 2009 in the Lormond opinion. Why didn't the statute of limitations apply? I mean, y'all had sued a long time ago and then sued again. Why isn't that kind of the end of the matter? There was no earlier lawsuit related to this particular work of art. The issue that was raised by the appellee was that in earlier sets of circumstances, there were some correspondence that may have led my clients to believe that this work of art was theirs, but they did not actually know it. And so the trial court properly denied on the statute of limitations ground, because there was not actually a pleading to support the statute of limitations at the 12b6 stage. Here we have the single lawsuit related to this particular work of art. Now there are two other sister paintings that instead of going to the Netherlands, like the Emden 1025 Perna did, they went to Germany, and those in 2019 under a German restitution commission were granted as flight art, art that was taken in the pre-war days by the Third Reich and then given back to the heirs, my clients, the Emden brothers. So this one painting remains on its journey through the Netherlands, into the United States, and ultimately given to the museum, the appellee, where it hung on the walls until this dispute. The act of state doctrines genesis largely comes from W.S. Kirkpatrick, a U.S. Supreme Court case from 1990, and a few of the important guardrails that were set in Kirkpatrick are ignored by the appellee in order to achieve its goal of dismissal. Under Kirkpatrick, the very basic standard is that the court will declare invalid the then the act of state doctrine precludes the actual cause of action for moving forward. But there are important limitations. This is not a bar into the inquiry into the motivation, only the validity of the foreign sovereign act. You say this is not a foreign sovereign act, is that right? That is correct. Our argument here is multiple. Not only that it is not an official act, because it was not done by an official government of the Dutch people at the time, but also that even if it is an official act, the one official act that occurred does not require invalidation. To really jump into ... But what, in your view, was the one official act or alleged official act? The only official act that occurred was a nullification of the after Bilotto's title. If the court looks to docket 35 for ... What about the transportation of the artwork? Certainly. That transportation did occur. There's no dispute here that the ... That would have been an act, right? It was an act, but whether it was an official act is a different story. Because under the appropriate authorities, official has many meanings. One, it has to be something that the government intended to do. It has to also be something that has legal import. There are certainly different ways to slice it. In both of those instances, this act does not constitute an official act of the Dutch government. First, because the Dutch government actually delegitimized and decided and declared in 2001 that the SNK, due to its ... Okay, you keep saying that, but I thought just one person made one sentence. Why is that an act of the Netherlands? They're a parliament. So if some secretary in the United States said X, would that mean that Congress has decided that? It would not. What it does indicate is that the Dutch ministry, the Dutch secretary in 2001, was making a declaration related to the formation of a new Dutch restitution procedure in conformity with the Washington principles. Its declaration there was acknowledging what already was known by the facts in 1947, which is that the SNK was a patchwork of volunteers that was not actually run by any Dutch officials. What evidence do you have that that one sentence in 2001 is determinative of the Netherlands? We have the statement itself that the Dutch government has not only stated that in 2001, but has continued to live that through its policies even through 2022 when the U.S. government and the Dutch government ... Can you tell me where in the record I can look at that? Absolutely. I want to know because I don't know that you've proven what Dutch law is basically. Sure. Which isn't necessarily the same as American law. Correct. But I would first ... Let me turn first to your question about the record sites. So the issues related to the question of the government itself relate to first amended complaints paragraph 77 through 90. Those specifically come from ... Looks like record on appeal 925 through 930. But I do think it is important ... Remember at the beginning of the argument I mentioned that often this devolves into a question of legitimate evidence and proving. But this is not the stage in which the plaintiffs are required to have evidence or have proof. Merely well pleaded factual allegations. No, but to me this is a question of law of the Netherlands and that is something that we would need to know. Let's say a secretary said something, but the king was in charge. I know that the Netherlands is more like England where they have a king, but it's not necessarily everything. But what if that were the case? Or what if we don't know? I'm not sure everybody in America knows all the rules in the Netherlands. Correct. And that is an important part of what the act of state doctrine wrestles with is what is the difference between whether there's an actual act that occurs and whether the question before the court is one of invalidity. Whether we look at the Fifth Circuit's case in Callejo or we look at the later cases such as Celestine out of the Second Circuit or even Geophysical, in each one of those cases there was a distinction between invalidating what was actually done and what the mere act of occurrence. Here, as Justice Smith asked, wasn't there an actual act of transfer? Sure. The painting actually moved, but was there an actual official act? And here all of the documents pointed to by the appelee, to the extent that they can't even be pointed to at this pleading stage, merely show that the one act that occurred was the decision of title related to the after Bellotto. So while it may be that there are competing inferences about how the Dutch viewed the SNK, the purpose of reasoning and raising that issue is that there is not an actual policy concern related to international relations. That's the core issue that the Fifth Circuit drew out of Kirkpatrick and has mentioned in both Callejo and in its later cases such as Geophysical. Let me ask you this. If we were to affirm, and I'm just saying, you know, just as a hypo, I'm not saying we will. Would you be able to go to the Netherlands and try to have them rule in your favor? No, because the painting is here. Okay, but I mean, if they ruled in your favor, would that change things? There's no precedent to say that that would change anything. That's part of the reason why throughout history as cited in our brief, the Washington principles have guided the courts and the State Department of the United States to say that other than in very limited instances in the United States, given the lack of a restitution commission, there's only one forum for resolving these disputes, the United States federal courts. Now, what's important is remembering von Sayer. Interestingly, the trial court did not cite to von Sayer at all during its opinion for dismissal despite being the most analogous case dealing with these issues, restitution of art under the act of state. And under the act of state doctrine as applied in von Sayer, competing experts and analysis of how the Dutch worked and how those restitution procedures went about was a key part. But any analogy to the von Sayer case actually highlights why this particular painting requires getting past the pleading stage and the motion to dismiss stage, because it was moved during the SNK, which was the legitimized under the pleadings that we have asserted in those factual assertions. Whereas the Kranich works inside of the von Sayer case were subject . . . I'm not understanding your argument correctly to be that the only official act was the declaration of title. As for the after mulatto. And so, we would be implementing instead of sort of, instead of invalidating the official act. Is that, is that what you're arguing? Am I following you correctly? A little bit. But to sum it up, you're, you're right there with me, which is, if you've made a decision about title related to the after mulatto, you have not also made a decision about a painting you did not know that you had. So this would be, the appellee's position requires at the pleading stage to countermand the factual assertions that the Dutch government as a whole, and then the SNK, which was a separate foundation, that none of them knew they had an artwork, and yet somehow they made an official act related to it, not merely transporting it, not . . . Again, I think to the point of Justice Smith's question, well, they did actually take an act, but that would be saying that an accidental movement of some item across a border or throughout a government or through a foundation such as the SNK somehow rises to the level of an official act. And for this affirmative defense, appellee simply hasn't met its burden to prematurely defend this case when, at the very least, like in von Sayer, important discovery should be taking place given the plausible factual assertions. At the end of the day, it might be improbable. It might not necessarily lead to relief. But the point of the 12b6 standard as applied in this case and by this Court in its various acts of state opinions is that ultimately those questions are not for the pleading stage. It will be decided as a matter of law as it was in von Sayer on summary judgment after discovery. Well, all right. So we are at the pleading stage. As you say, have you affirmatively pled that the Netherlands did not act? Does your complaint say that or amend the complaint? It does. So I would specifically point to the paragraphs of the First Amendment Complaint 77 to . . . I'm issue that the only decision that was made was made by the SNK, which was illegitimate, and then 40 through 44 deal with the title issue, which is to say that there is no title decision made, no official act regarding the actual painting, only the after Bilotto. Again, that for the title question, 40 to 44 in the First Amendment Complaint. To sum on that final point, to determine, to follow the appellee's position would be to find that while the SNK did make a decision about the after Bilotto's title, nullifying the transfer from Almas Dietrich for this reproduction painting, it could not have also made an official act regarding a painting it did not have. Rather, that question is reserved for resolution before this Court, and for those reasons, appellants request this Court reverse and remand. Thank you. You've saved time for rebuttal. Thank you, Mr. Richman. Mr. Stauber? Good morning, Your Honors, and may it please the Court, Thaddeus Stauber on behalf of the I'd also like to introduce Carlotta Ramirez, General Counsel of the Museum of Fine Arts Houston, here from Houston to join us. It brings me actually great honor to appear before this Court. Judge Hayes will recall our work together in 2008-2010 in connection with the Dunbar versus Seeger-Tomschitz case, in which I represented the Dunbars in a Fifth Circuit case, which here held and looked at an art restitution case, and affirmed the lower court in finding that the Louisiana owner was the rightful owner of it. And what was important to that particular case was it involved the Terrazin-Dilek relation, which was at the time the U.S. statement on the policy of art restitution cases. That policy and those procedures have continued through time to today, wherein most recently on May 5th, the United States State Department reaffirmed the Washington Principles and Terrazin Declaration, and in doing so, in its preamble, as we point out and shared with this Court in our 28-J letter, it reaffirmed that we have to respect differing legal systems. We have to respect the laws of nations, the laws of other nations. And in this case and herein, despite what the plaintiff tells you, the United States has not taken any other position. Those specific guidelines do not state that the act of state or any other affirmative offense is no longer allowed in this Court. Judge Hayes brought up the statute of limitations issue, and I appreciate you doing that because in 2007, when this claim was first made, it was my honor to be appointed by the Museum of Fine Arts to engage independent counsel to do an international search. And we did that, and we shared the results of that research with the plaintiff's counsel, their prior counsel, and their family. Research that was done by one of the world's leading independent researchers, Laurie Stein. Research which they themselves cited in their first complaint. But Judge Ellison, wisely and astutely, while denying the initial, well, I'm sorry, affirming the or granting the initial motion to dismiss, gave the plaintiff's leave to amend. And the plaintiffs took that opportunity. But when they amended their complaint, they frankly pled themselves right back into the act of state doctrine. We don't have to look outside the corners of this amended complaint. I would direct your attention to paragraphs 2, 3, 38, 40, and 52, along with the appellant's own brief, 43 to 44. It's therein that we find the very elements that are necessary to establish the act of state doctrine. Was there a governmental act? Was it undertaken by a recognized sovereign, and was it done so within its own territory? Well, we find the plaintiffs have given us the very roadmap in their complaint. Paragraph 2, the Monuments Men, U.S. military officers directly under the authority of the United States government. Paragraph 3, Emden, 1025 Perna, to the Netherlands with a custodial receipt to the National Art Foundation, that receipt signed by a lieutenant governor of the Dutch government. Paragraph 38, pursuant to U.S. policy sent to the Netherlands, the receiving government. Paragraph 40, Hugo Moser wrote to U.S. Foreign Service Administration. He then wrote to the officials at SNK. And finally, paragraph 52, Dutch officials, Dutch officials delivered Emden 1025 to Moser. Well, list for us, or summarize for us, what is the act, or what are the acts that you claim were acts of state as they pertain to this case? Yes, Your Honor. The acts of state to be reviewed are those of the acts of the Dutch government. The Dutch government carried out those acts through the SNK. Tell us what the acts were. The act was the receipt of the artwork, the very artwork that is now at the Museum of Fine Arts Houston. No matter what name you give it, it is the artwork that is in dispute here today. It was that very artwork which was given to the Dutch government by the United States government. There is the act, one act. The second act was the Dutch government, through the SNK, handing or delivering or turning that artwork over, and therefore giving title of that artwork to Hugo Moser. Once that is done, all those acts occurred within the territory of the Netherlands, full stop. Whether that act was right, whether that act was wrong, whether we agree with it, that is not the point. That was the act that was done. So the only reason we are here today is not because of some decision about after Bellotto or a Renoir. We're here today because the Bellotto, which the Endenaers claim is the very Bellotto which was given to Hugo Moser, who then sold it to Samuel Kress, who in 1960s donated it to the Museum of Fine Arts Houston. That is it. That is the work. So Judge Ellison gave the plaintiff a second opportunity to file an amended complaint, and all the plaintiff did, quite candidly, was move some names around and attempt to disguise what they had already pled. So your answer to my question, if I understand it, is you named two acts. One was the receipt of the art, and the second was the delivery of the art, which you say was tantamount to a grant of title. Are those the two acts that you're claiming? Yes. And tell us how it came about that those were official acts of the Dutch government. As the plaintiff themselves says, the Dutch officials did it. So the complaint straightforward says it. As the plaintiff also pled in their complaint, that when they claim that in 2001, an official of the Dutch government somehow irrevoked or undid or unwound what the Dutch ministry did, in fact, that report known as the Origins Unknown Report, which was cited by the plaintiffs, specifically lays out that in fact it was the Dutch ministry which, pursuant to the the ministry that was empowered to deal with artwork that was returning to the Netherlands and had been lost, stolen, or otherwise taken during the war. That very Dutch ministry, which the plaintiff now wants you to undo their actions, was the Dutch ministry that created the SNK, that empowered the SNK to deal with the artwork. A government has to work through an agency or entities. Acts of restitution are not private acts. Acts of restitution are governmental acts. A private party cannot restitute property. This policy, which while it may frustrate some people because they'd like to see artwork given back to individuals, was a policy set forth by the Allies, a policy that was attempting to put back a torn about Europe and restitute artwork back to countries and then empower those countries to follow through with those policies and procedures. That's exactly what happened here. That one sentence in 2001 that your opponent has focused on, is that even determinative under Netherlands law? No. Okay. No. As the court points out, the Netherlands is a parliament. If the Netherlands wanted to undo the decisions of its predecessor governments, because it still continues to exist, which is an element that we look at for this act of state doctrine, it could do so. It could say, we revoke all those decisions through Parliamentary Act X. The plaintiff points you to Van Saar and notes that Judge Ellison didn't cite Van Saar in his second decision. Judge Ellison didn't cite Van Saar in his second decision because he didn't need to. It's simply persuasive guidance for this court, but we sit here in the Fifth Circuit Court of Appeals. Callejo tells us what the act of state doctrine is. Judge Simlick gave you a wonderful walkthrough in what the act of state doctrine is and how it's implemented. Supreme Court precedent in Underhill-Sabatino tells you the act of state doctrine and how it applies. But what Van Saar does and helps you see is, your Honor asked, what is Dutch law? Well, the court went through what Dutch law is there. And this court is well equipped to take judicial notice of what Dutch law is. I would submit, if the plaintiff really wanted to pursue their case, the pursuit is with that entity which they think made the mistake. They could, in fact, file an action, I believe, with the Dutch government, or they could appeal to the Dutch government, ask the Dutch government to revoke its decision. But the fact that the Dutch government, in attempting and courageously looking back at its history, called into question actions that happened at that point in time, but stopped short of undoing those actions, and simply said they could be revocable, tells us that it is not for this court to exercise jurisdiction and make a decision which, by definition, will require it to make a title decision with respect to the Bolado that is at the Museum of Fine Arts Houston. Not after Bolado, which we have no idea where it is. So we understand and we are compassionate to the fact that these cases present very struggles. That is why the Museum of Fine Arts Houston, a non-profit which holds its property and independent investigation, by one of the world's recognized experts. That is why it shared that research. That is why the artwork continues to be displayed. The artwork is where it properly should be. The museum made a decision on its merits. But at this stage, it's appropriate. They're holding it back because they don't want to have this lawsuit. Well, when you are a non-profit, by definition, you hold your property in trust for the people of the state of Texas. You have an obligation to look at the merits of the case. And that's what the guidelines tell us. That's what the Washington Principles, the Terrorism, and now the most recent U.S. State Department tells us. That's exactly what the Museum of Fine Arts Houston did here. They did look at the merits of it and they made an informed decision based on the historical documentation that Mr. Emden was not the subject of persecution with respect to this artwork. That Mr. Emden lived on a private island in Switzerland, had control of this artwork and the other artworks that he owned, shipped this artwork to Europe through a dealer of his own choice, rejected a first price, shipped the artwork back, and shipped it back again. Received payment at a price that he asked for. So, what I don't want to run too far astray of, the point is, at the motion to dismiss phase, we have met our burden with respect to the act of state. We think we'd also met our burden with respect to the statute of limitations, Your Honor, because the claim was clearly rejected in 2007. But what the plaintiffs are attempting to do here is to simply plead what they want to plead. But the pleading standards are not that loose. We don't ignore reality. We don't throw aside the actual documented facts. But even when given a second chance, as I pointed out to this Court, the plaintiff walked himself right through the act of state, and we would ask this Court to apply it. I'd be happy to take any other questions that the Court might have. All right. Thank you, Mr. Stauber. Thank you. Mr. Richmond for rebuttal. May it please the Court. I want to jump right into the two acts that were addressed by Mr. Stauber. One, the receipt. The receipt of it is not an issue in this case, the fact that it was actually physically delivered. But I do want to focus on that second one because it really is the crux of the concern under act of state. Mr. Stauber, I may mince these words a little bit, said that they gave the perna to Mr. Moser. And they did. They did. But that receipt, which is actually docket 46, page 27 included in the record, only talks about one painting. It only talks about one decision. It talks about the after Bilotto's title. Mr. Moser's application, as also included in the record, is an application that says that he gave this painting, his painting, the after Bilotto, to a restorer who then lost it during the war, and Almas Dietrich, a fan of the Nazis, ultimately bought it and gave it to the Nazi regime. And that is why he had a claim to the after Bilotto. All of the information that the SNK had, according to the factual allegations in the pleading at this stage, are that the SNK had no idea what it was doing with that particular piece of art, that it did not know that it had. And so there cannot be an official act regarding the title decision of something, perhaps if there was no decision at all, perhaps. But here we have one official act, nullifying title to the after Bilotto, and the appellee kindly ignores that. Because let's take this to the logical extension, if the after Bilotto were to be the piece of art in dispute today, we would already have an official act. You'd hear from the appellee, there was an official act. Look at this receipt that says a title decision was made. But they cannot point to an official act of any Dutch foundation, government, agency, or department, because it did not happen. Now to get to the question regarding the 2001 statement, I don't want to overstate its importance. Because the 2001 official statement of the Dutch ministry, not merely a press release, but an actual act that was creating a new commission, merely acknowledged the facts on the ground at the time of the SNK. The SNK was actually dissolved a year after the Emden 1025 Perna was sent out because of the de-legitimate status of lieutenant colonel in charge. While he was actually in the military, this was a volunteer position for a foundation that the allegations in our complaint show was a separate organization, done under a power that was shut down due to the fact of the mistaken transfers that the Dutch government says today it is still dealing with. That assertion of fact is more than enough for the Emdens to be able to move forward with this case past the pleadings. Because while there were actual officials who were doing this work, it is undisputed that they did not know and thus did not make an official act regarding the Perna. And two, that the legitimacy of that organization has not only been in question because of the facts, but by the real restitution commissions that have come forth since. It may be, as you heard Mr. Stover talk about, that there are moral reasons why this donated piece of art should remain on the wall for, I guess, the benefit of the citizens of the state of Texas, of which I am one. But I think the reality is that, as I said before, this is a devolution into arguments on the merits better held after the pleading stage. The reality is that, as we pleaded, the Association of Museum Directors has long put the Museum of Fine Arts Houston in the position of agreeing with the Washington Principles, which say that the priority is restitution to the victims, not to the masses of the state of Texas, which apparently the Museum is working for. The issue of where the art should go is not one for today. The question is whether the pleadings are sufficient, and they are. Ultimately, the reference to all of these different appeals to emotion in Swiss and Lake and whatnot, I mean, we certainly could have made reference to the irony or perhaps coincidence of the home of the World War II Museum being where we make this argument, but those emotional appeals have no place here today. They really don't. The pleadings have been met. The opportunity to correct was taken and satisfied all of the questions of the trial court and the standard as this court has set out under active state. For these reasons, this court should reverse remand. Thank you. All right. Thank you, Mr. Richmond. Your case is under submission. Next case.